IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

TINA SUE ANN GIBSON, )
)
Plaintiff, )
)
v. ) Case No. CIV-10-259-KEW
)
MICHAEL J. ASTRUE, )
Commissioner of Social )
Security Administration, )
)
Defendant. )

## OPINION AND ORDER

Plaintiff Tina Sue Ann Gibson (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally*, Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on September 10, 1973 and was 34 years old at the time of the ALJ's decision. Claimant completed her education through the eighth grade. Claimant worked in the past as a fast food worker, waitress, nurse aide, habilitation training specialist, teacher aide, and cashier. Claimant alleges an

inability to work beginning January 1, 2004 due to limitations arising from bipolar disorder, adjustment disorder, panic agoraphobia, depression, anxiety, mood disorder, and abdominal pain.

## Procedural History

On September 28, 2005, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On November 28, 2007, an administrative hearing was held before ALJ Edward L. Thompson in Ardmore, Oklahoma. On May 30, 2008, the ALJ issued an unfavorable decision on Claimant's applications. On May 14, 2010, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform a full range of work at all

4

exertional levels with certain non-exertional limitations.

## Errors Alleged for Review

Claimant asserts the ALJ committed error in: (1) failing to properly evaluate the opinions of Claimant's mental health counselors; and (2) arriving at an RFC which is not supported by substantial evidence.

## Evaluation of Opinion Evidence

Claimant contends the ALJ failed to properly evaluate the opinions provided by her mental health counselors, who she classifies as "other sources" under the regulations. On November 27, 2007, Claimant was evaluated by Ms. Morgan Powell, a rehabilitation counselor. Ms. Powell completed a Mental Residual Functional Capacity Assessment form on Claimant. She provided a diagnosis for Claimant of bipolar disorder, most recent episode; major depression with severe psychotic features; and panic disorder with agoraphobia.

Ms. Powell found Claimant was moderately limited in the areas of the ability to remember locations and work-like procedures, ability to understand and remember very short and simple instructions, ability to carry out very short and simple instructions (noting Claimant "sometimes gets distracted during 1 task and begins another before 1st is completed"), ability to carry

5

out detailed instructions, ability to make simple work-related decisions, ability to interact appropriately with the general public, ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes, ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness, and ability to travel in unfamiliar places or use public transportation.

Ms. Powell determined Claimant was markedly limited in the areas of the ability to understand and remember detailed instructions, ability to maintain attention and concentration for extended periods, ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, ability to sustain an ordinary routine without special supervision (noting she "always needed supervision"), ability to work in coordination with or proximity to others without being distracted by them, ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, ability to accept instructions and respond appropriately to criticism from supervisors, and ability to respond appropriately to changes in the work setting. (Tr. 422-26).

On February 24, 2006, Claimant was also evaluated by Ms. CeCe

Thompson, MSPS, LPC, also a mental health counselor. Ms. Thompson estimated Claimant's GAF at 45. This finding is evidenced by Claimant being isolated, having interpersonal difficulties within and without her family such that Claimant was found not to be able to work. (Tr. 236).

On February 23, 2006, Claimant underwent a mental status examination by Dr. Beth Teegarden. Dr. Teegarden found Claimant to suffer, by history, intermittent episodes of depression. She struggles with irritability, suffers from insomnia, excessive feelings of worthlessness, poor energy, low concentration, low appetite, and psychomotor slowing.

Claimant also reports auditory and visual hallucinations, including a conversation between two men. She also reports seeing her deceased father-in-law, which is soothing to her.

Claimant experiences panic attacks and anxiety. She has anxiety around unfamiliar people and avoids leaving the house. (Tr. 210-11).

Claimant has not been hospitalized. She has no history of suicide attempts. She is on psychiatric medications. (Tr. 211).

Dr. Teegarden found Claimant to be pleasant and cooperative. Her hygiene was good. She appeared calm. Claimant's thought processes were found to be logical and goal-directed. Her mood was depressed and her affect had full range. She was alert and

7

oriented with average intelligence.

Dr. Teegarden diagnosed Claimant at Axis I: Mood disorder, NOS, Rule out intermittent explosive disorder, Rule out anxiety disorder, NOS; Axis II: Deferred; Axis III: Irritable bowel syndrome, entometriosis, bilateral tubal ligation; Axis IV: Access to healthcare. (Tr. 212).

On Apirl 12, 2006, Dr. Burnard Pearce completed a Psychiatric Review Technique form on Claimant. Dr. Pearce found Claimant to suffer from Affective Disorder of Depressive Syndrome evidenced by difficulty concentrating or thinking. (Tr. 218). He also determined Claimant suffered from Anxiety-Related Disorder evidenced by generalized persistent anxiety. (Tr. 220). Dr. Pearce cited many of the findings of Dr. Teegarden in his conclusions. He also notes the treatment received from Ms. Powell and Ms. Thompson and the finding of a current GAF of 45. (Tr. 227).

Dr. Pearce also completed a Mental Residual Functional Capacity Assessment on Claimant. He found marked limitations in the areas of the ability to understand and remember detailed instructions, ability to carry out detailed instructions, and ability to interact appropriately with the general public. (Tr. 229-30). He concluded Claimant could understand, remember, and carry out simple tasks under routine supervision, can relate

8

superficially to co-workers and supervisors for work purposes, and cannot tolerate active involvement with the general public. (Tr. 231). On October 16, 2006, Dr. Ron Smallwood affirmed Dr. Pearce's findings. (Tr. 268).

In his decision, the ALJ gave the opinions of the state agency physicians Drs. Pearce and Smallwood "great weight because these are well supported by medically acceptable clinical and laboratory findings, and are consistent with the record when viewed in its entirety." He found the opinions were "persuasive and, therefore, adopts this residual functional capacity." Conversely, the ALJ gave the opinions of Ms. Powell and Ms. Thompson "little weight because the undersigned finds more persuasive the opinion of the two psychologists who both have higher mental health credentials, specifically Ph.D., than Ms. Thompson's LPC and Ms. Powell who is under supervision for license for LPC." (Tr. 18).

To that end, the ALJ determined Claimant suffered from the severe impairments of bipolar I disorder, most recent episode depression, and anxiety disorder. (Tr. 13). He concluded Claimant retained the RFC to perform a full range of work at all exertional levels with the non-exertional limitations that Claimant can understand, remember, and carry out simple tasks under routine supervision, can relate superficially to co-workers and supervisors for work purpose, and cannot tolerate active involvement with the

9

general public. (Tr. 15).

Clearly, neither Ms. Powell nor Ms. Thompson as a licensed professional counselors constitute an acceptable medical source, 20 C.F.R. §§ 404.1513(a)(1-5), 416.913(a)(1-5), or a treating source, 20 C.F.R. §§ 404.1502, 416.902. Although Ms. Powell's and Ms. Thompsons's assessments would be considered other medical evidence that could be used to show the severity of Claimant's impairments, 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1), the ALJ had no obligation to give these assessments the same weight as a "medical opinion," 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2) (defining medical opinions as statements from acceptable medical sources that reflect judgments about the nature and severity of a claimant's impairments). Further, the statements within both of the counselors' assessments reflecting the opinion that Claimant could not work invade a matter reserved to the Commissioner. See 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1). The ALJ expressly stated that the reason for accepting Dr. Pearce's and Dr. Smallwood's opinions over those of the counselors was their qualifications as a medical source. Although Dr. Pearce's statement was not fully complete as to whether Claimant's condition met a listing under the paragraph B criteria, it was completed in assessing her RFC. (Tr. 225, 229-31). This was sufficient support for the ALJ's adoption

of this opinion evidence. Additionally, the ALJ adequately stated the weight afforded to each opinion and the basis for doing so as he was obligated to do.

Claimant contends Dr. Pearce's assessment contained various errors in its adoption of Dr. Teegarden's consultative examination findings. None of these alleged discrepancies are fatal to the ALJ's adoption of Dr. Pearce's evaluation. For instance, Claimant contends Dr. Pearce mischaracterized Dr. Teegarden's finding concerning hallucinations, finding the auditory hallucinations were calming to her rather than the visual hallucinations of her father-in-law. Actually, Dr. Teegarden's report is sufficiently vague in this regard to be interpreted to mean all of the hallucinations were calming to Claimant. (Tr. 210).

Further, Dr. Pearce found Dr. Teegarden had assessed Claimant's memory and concentration as being within normal limits. While Dr. Teegarden did not specifically make a finding of normalcy, she did not find it to be abnormal after reporting the findings on specific testing. (Tr. 212).

While this Court might agree that the counselors' findings were based more on their treatment and observation of Claimant than the state agency physicians, the fact remains that the counselors' opinions were not entitled to equivalent persuasive weight as the physicians. The ALJ adequately considered the counselors' opinions

11

on the severity of Claimant's impairments and that was the extent of his obligation to consider these opinions. No error is attributable to this issue.

### RFC Evaluation

Claimant also contends the ALJ erred by not including restrictions found by Ms. Powell in her November 2007 assessment in limiting Claimant to relative isolation in order to accommodate her inability to maintain attention and concentration for extended periods. Ms. Powell found Claimant to be easily distracted and displayed some memory problems. (Tr. 407). None of the preferred consultative physicians' opinions support a finding of isolation while Claimant's limitations concerning interaction with the public is fully accommodated in the ALJ's RFC assessment. Accordingly, the ALJ's RFC is supported by substantial evidence

### Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, this Court finds the ruling of the Commissioner of Social Security Administration should be and is **AFFIRMED**.

DATED this 27th day of September, 2011.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE